It was not pretended on the argument that the subscription of the village of Rome to the stock of the railroad company, and the execution and delivery to the commissioners of the village bonds, were unauthorized acts. The scheme of taking the stock and creating a debt of $150,000 had been duly approved by the taxpayers. The execution of the bonds was therefore authorized and perfect, and the "Commissioners of the Railroad Fund" held them for sale and disposition according to certain further conditions prescribed in the 11th section of the statute (Lawsof 1853, 596). By that section the commissioners were authorized to negotiate these bonds so as to make them operative instruments, only on condition that the sum of $500,000 should be subscribed to the stock of the railroad, exclusive of the village subscription of $150,000; and the commissioners were directed, before selling the bonds, to make a certificate under their hands declaring that such subscription had, in fact, been made in good faith by persons able to pay the sums subscribed by them. This certificate was to be filed with the clerk of the village of Rome, and it was, in fact, made and filed in all respects according to the law. The facts, so far stated, had been proved when the motion for a nonsuit was made, together with the additional one that the commissioners delivered the bond on which the suit was brought to the railroad company in exchange for an equal amount of stock in that company. This was a mode of negotiation authorized by the statute. (§ 3.)
It follows that the motion for a nonsuit was properly overruled. The bonds were payable to bearer, and although *Page 24 
under the corporate seal of the village, they were negotiable instruments in such a sense as would exempt them, in the hands of a bona fide holder, from a defence which might be available against the railroad company. (State of Illinois v.Delafield, 8 Paige, 527; S.C. on appeal, 2 Hill, 159, 177; Mechanics' Bank v. New Haven R.R. Co., 3 Kern., 625, 627; Fisher v. Morris Canal Co., 3 Am. L. Reg., 423.) If, in point of fact, the commissioners delivered the bonds to the railroad company in exchange for stock, without a performance on the part of that company of the condition precedent of procuring a subscription of $500,000 to the stock, it is quite probable that the company itself could not enforce the bonds, although the proper certificate had been filed, declaring the condition to have been performed. By the express terms of the statute, the subscription was to precede the sale of the bonds, and I do not see how the company could get a title to them unless it procured that subscription to be actually made.
But the question is very different, where the rights of a bonafide holder are concerned. The bonds, as we have seen, were executed by due authority; the only defensive allegation being that they were improperly issued and thrown upon the market by the commissioners. Admitting this allegation to be true, I think it is no defence. It is true, that every person purchasing one of these bonds in market knew, or was bound to know, what were the conditions under which they could be lawfully issued. These were prescribed in the statute. But the same statute required a certificate to be made, which was to become a public record, declaratory of the fact that all the conditions had been performed. In the case of the State of Illinois v. Delafield
(supra), State bonds or stocks had been prepared and executed by the officers having due authority of law; the purpose being to sell them in order to raise funds for the construction of a canal. They were put into the hands of agents for sale, who sold and delivered them in violation of an express provision of the law which authorized their creation. It was held by the Chancellor — and, on appeal, by the Court of Errors — that the bonds would be obligatory upon *Page 25 
the State of Illinois in the hands of bona fide holders; and on that ground, the defendant, Delafield, was restrained from selling or disposing of them. That decision rested on a principle entirely familiar in the law of negotiable paper, and of no doubtful application to the present case. If the commissioners abused or transcended their powers in the sale of the bonds in question, the statute under which they acted made them personally liable to the village of Rome (§ 4). But such abuse or excess of power would not affect parties purchasing the bonds in good faith, beyond the means which the statute itself provided for ascertaining the facts on which the exercise of the power depended. Those facts were to be declared in the certificate before mentioned. That being made and filed, as the law required, and the bonds being actually issued by the commissioners, they could be safely bought in the market like other negotiable instruments. It is, indeed, scarcely possible that the Legislature could have any other design in requiring such a certificate to be made.
The motion for a nonsuit having been denied, the defendant offered to prove, in substance, that, although the railroad company procured a subscription of over $500,000, the per cent thereon had not been paid in, as required by the general railroad act (Laws of 1850, p. 211, § 4), at the time the commissioners made and filed their certificate. The evidence was rejected; and the decision was right, upon two grounds: First, the subscribers to the stock could not, as I now think, but without a particular examination of the question, repudiate their subscriptions on the ground that they had failed to pay down ten per cent; second, the certificate of the commissioners that $500,000 had been subscribed, c., was conclusive evidence of the fact, as between the village of Rome and parties who purchased the bonds in good faith. The reasons for this conclusion have already been suggested.
The judgment should be affirmed.
DENIO and GRAY, Js., expressed no opinion; all the other judges concurring,
Judgment affirmed. *Page 26